IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**LEONARD W. WILLEY**,

        Plaintiff,

vs.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

        Defendant.

Civil Case No. 09-325-KI

OPINION AND ORDER

    Rory Joseph Linerud
    Linerud Law Firm
    P.O. Box 1105
    Salem, Oregon 97308-1105

        Attorney for Plaintiff

    Dwight C. Holton
    Untied States Attorney
    District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

Terrye E. Shea
Special Assistant United States Attorney
Assistant Regional Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Leonard Willey brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying his application for disability insurance benefits ("DIB").  I affirm the decision of the Commissioner.

## BACKGROUND

Willey filed an application for DIB on August 24, 2004.  The application was denied initially and upon reconsideration.  After a timely request for a hearing, Willey, represented by counsel, appeared and testified before an Administrative Law Judge ("ALJ") on July 24, 2007.

On October 17, 2007, the ALJ issued a decision finding that Willey was not disabled within the meaning of the Act and therefore not entitled to benefits.  This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on January 23, 2009.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007), cert. denied, 128 S. Ct. 1068 (2008); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which

significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than

a preponderance.  Id.  "[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ determined Willey had not engaged in any substantial gainful activity from his alleged onset date of disability of June 29, 2000 through his date last insured of December 31, 2004.  The ALJ did note that Willey earned $4,500 in 2000, $12,900 in 2001 and $25,000 in 2004.  At the hearing, Willey testified that he had earned about $10,000 in 2006 and had earned about $2,400 a month in 2007 until he was laid off in July.  The ALJ concluded that he would fully consider the application despite these high earning levels based on Willey's representation that his condition worsened periodically, rendering him incapable of work during those times.[1]

After examining the record, the ALJ concluded Willey suffered from attention deficit hyperactivity disorder, a cyclothymic disorder,[2] an anxiety disorder with agoraphobia and obsessive-compulsive features, and a learning disorder.  He also mentioned Willey's diagnosis of

---

[1]Subsequent earnings records provided by the Commissioner, but not submitted to the ALJ or the Appeals Council, reflect that, contrary to his testimony to the ALJ that he earned $10,000 in 2006, he actually earned $20,740.  He earned $25,374.98 in 2007 and $25,297.00 in 2008.  The Court does not consider this evidence as it was not submitted below.

[2]"[R]elating to, having, or being a mood disorder characterized by alternating short episodes of depression and hypomania in a form less severe than that of bipolar disorder. Cyclothymic Definition, Merriam-Webster Medical Dictionary, http://www.merriam-webster.com/medlineplus/cyclothymic (last visited Sept. 17, 2010).

Page 5 - OPINION AND ORDER

cognitive disorder,[3] citing to medical evidence in which the diagnosis appears, indicating he considered it a severe impairment. The ALJ found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.

The ALJ opined that Willey could perform the full range of exertional work, but was limited to work that was slow to moderately paced, and was simple, routine and repetitive work. The ALJ also concluded Willey could only perform work that could generally be done alone, other than infrequent interactions with supervisors and co-workers, and that did not require interaction with the general public.

The ALJ concluded that, given this residual functional capacity ("RFC"), Willey could perform his past work as an automobile body repairer/helper.

## FACTS

Willey, who was 47 years old at the time of his alleged onset date of disability, left high school in the eleventh grade and volunteered for the military. He spent three years in the military and obtained his GED during that time.

He has largely worked in auto body shops. He took some vocational classes in 1999 to retrain and update his skills in the field. He lost his last job in July of 2007, just before the hearing, because the owner of the auto body shop did not have enough work for him.

---

[3] Alan R. Breed, Ph.D., diagnosed cognitive disorder not otherwise specified (294.9), an example of which would be "impairment in cognitive functioning as evidenced by neuropsychological testing or quantified clinical assessment, accompanied by objective evidence of a systemic general medical condition or central nervous system dysfunction." The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 179 (4th ed. 2000) ("DSM-IV").

Willey has psychiatric examinations in his file dating back to 1990 that indicate he has a short attention span, dyslexia, and slow speech.  In 1996, Alan R. Breen, Ph.D., diagnosed cognitive disorder NOS, attentional, auditory comprehension, and verbal memory difficulties, anxiety disorder, and obsessive compulsive personality disorder.  Dr. Breen reported that Willey had found good work environments in the past, which included "low speed demands, the ability to control his own work pace, and the ability to be left alone.  He clearly needs a hands-on job which does not require a lot of people or communication skill."  Tr. 325.

James D. Czysz, Psy.D., reported that Willey had a learning disability, especially in math, and that he avoided high volume auto body shops in favor of smaller "mom and pop" places.

John A. Dippel, M.D., diagnosed Willey with generalized anxiety disorder and panic disorder with agoraphobia.  He treated Willey's anxiety with Xanax and Adderall, and Willey reported improvement in his anxiety levels and in his mood.  He obtained a job at an auto body shop during the time Dr. Dippel was treating him.

In 2001, Thomas K. Green, Ph.D., evaluated Willey and assigned a Global Assessment of Functioning ("GAF") score at 35, opining that this was the highest score in the past year for Willey.[4]  Dr. Green found symptoms consistent with mood disorder, progressive personality disorder, and generalized anxiety.  After testing Willey, Dr. Green believed he was incapable of

---

[4] The GAF is a scale from 1-100, in ten point increments, that is used by clinicians to determine the individual's overall functioning. A GAF of 31 to 40 indicates "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school.)" DSM-IV at 34.

Page 7 - OPINION AND ORDER

following more than 2-step instructions, and was limited in his ability to relate appropriately to co-workers, supervisors, or the general public. Tr. 230.

In June 2003, Curtis L. Adams, M.D., reiterated Dr. Green's opinion as to Willey's GAF. In a very short evaluation, he diagnosed ADHD, cognitive disorder, generalized anxiety disorder, dysthymic disorder, and schizotypal personality disorder with prominent avoidant traits.

Willey reported to Arlene Isaacson, Ph.D., in November 2003 that he "receives a veteran's disability check and therefore wants to work only the number of hours that he is able to in order to continue to receive this check." Tr. 237. Her testing revealed an average IQ. Willey had problems with timed tasks, had trouble concentrating and was distracted on some tasks.

In an April 2004 evaluation, Willey reported to Terrel L. Templeman, Ph.D., that he had done auto body work for thirty years, that the type of work is seasonal and the "last hired is the first man out." Tr. 261. He had never been fired. He described suffering from anxiety and obsessive compulsive-type behavior such as checking and rechecking the time, his mail, paperwork, and directions. Dr. Templeman opined that Willey's obsessive compulsive habits slowed him down. He noted that Dr. Isaacson's testing showed Willey had good reasoning, problem solving, and perceptual organization, and above average visual spatial reasoning. As a result, "[H]e is probably still capable of doing auto body work or similar tasks, but only slowly, in a perfectionistic manner, and without time pressure." Tr. 268. Dr. Templeman did note Willey's social phobia and the fact that he did not like leaving the house.

Later that year, in October, Dr. Templeman evaluated Willey again. He noted that Willey had obtained full time work (six days a week from 7:00 am to 5:00 pm) at an auto body shop and that his boss valued his work. Dr. Templeman reiterated the diagnoses of anxiety disorder with

obsessive compulsive features, social phobia, and panic disorder with agoraphobia, as well as cyclothymic disorder, rule out bipolar disorder, and cluster C personality disorder.  He assigned a GAF of 55.[5]

Willey described to Jeff Clausel, Ph.D., in March of 2005, that he had been laid off about six months before.  He reported that this was typical of what happens to him.  Dr. Clausel found Willey's presentation to be classic obsessive-compulsive personality disorder with narcissistic features.  He assigned a GAF of 50.[6]  Dr. Clausel concluded that Willey could be rehabilitated but only with intensive psychotherapy, and he believed that without serious psychological help, Willey's "occupational prognosis . . . is almost nil."  Tr. 312.

In a February 8, 2005 opinion, the Agency's psychological consultant, Peter LeBray, Ph.D., concluded Willey demonstrated moderate limitations in ability to understand, remember and carry out detailed instructions, maintain attention and concentration, respond appropriately to changes in work setting and set realistic goals.  Dr. LeBray opined Willey could "understand, carry out, follow, and perform tasks that are simple in nature of one to two step commands . . . . He is not capable of performance of tasks that are detailed, fast-paced or complex."  Tr. 303.  Dr. LeBray confirmed that Willey could not deal with the public, but could relate to co-workers and others on a casual, routine basis.  Finally, Dr. LeBray noted Willey could "benefit from supportive lay supervision (not overly harsh, highly demanding)."  Id.

---

[5]A GAF of 51 to 60 indicates, "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)."  DSM-IV at 34.

[6]A GAF of 41 to 50 indicates, "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or social functioning** (e.g., no friends, unable to keep a job)."  Id. at 34.

Page 9 - OPINION AND ORDER

DISCUSSION

I.     Willey's Credibility

Willey objects to the ALJ's analysis of his testimony, contending that the ALJ rejected his testimony in "blanket statement fashion." Pl.'s Op. Br. at 13. He is specifically critical of the ALJ's failure to discuss the following testimony:

> Attorney:    Okay. If you were doing another type of work – another type of job such as inspecting items that's been manufactured or sorting items, how would you do those types of jobs? Do you think you'd perform okay?
>
> Answer:      If it was constant repetitive, I do have a problem with that. When I get mentally taxed it causes blackout spells. Or I guess a – I don't know how you'd call it – they claimed that I daydreamed when I was in elementary school, and what it was is me blacking out.

Tr. 393-94.

Willey also takes issue with the ALJ's treatment of his testimony that he has been terminated from employment in the past because of his slow pace. He testified, "That has been my employment record for about as many years as I can count." Tr. 391. Willey also testified that he had trouble getting along with co-workers, particularly in the larger shops, and he contends the ALJ failed to address this testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of

Page 10 - OPINION AND ORDER

the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  Id.  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence.  Id.

     The ALJ specifically summarized the testimony to which Willey refers.  See Tr. 21.  The ALJ noted, however, that Willey's initial treatment for his symptoms was "routine and/or conservative" and "generally successful" in helping him with his symptoms.  Id.  Furthermore, he was no longer seeking psychotherapy or medications for his impairments, despite physician recommendations that he do so.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (unexplained failure to seek treatment or to follow a prescribed course of treatment is a credibility factor); Smolen v. Chater, 80 F.3d, 1273, 1284 (9th Cir. 1996) (same).  The ALJ also pointed out that the medical record reflects Willey experienced these impairments prior to his onset date of disability, "at approximately the same level of severity," and they did not prevent him from working. Tr. 21-22.  Finally, the ALJ pointed out that Willey sought to limit his work to part-time so as to maintain his veteran's disability check.  These are all reasons that are specific to find Willey's symptoms not as severe as he contends, and the reasons are supported by substantial evidence in the record.

     I also note that the ALJ's hypothetical specifically dealt with Willey's need for a slower pace of work, as well as addressing his difficulty in working with co-workers.

     In sum, I find the ALJ did not err in evaluating Willey's testimony.

II.     Lay Testimony

Nanette Elizabeth Willey, his wife, testified that Willey "doesn't play well with others." Tr. 406.  She also testified that he lost work because he was too slow.  Willey argues that the ALJ did not adequately address this testimony.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006).

The ALJ pointed out inconsistencies in Mrs. Willey's testimony.  For example, she testified that she did all of the driving and that Willey did not perform any household chores.  To the contrary, however, the record reflects Willey did drive and he reported he performed housework, car maintenance, and yard work.  This is a reason germane to Mrs. Willey's testimony, and support for the ALJ's conclusion, that her testimony was not entitled to substantial weight.

III.    Residual Functional Capacity

The crux of Willey's challenge is whether the ALJ included all of Willey's functional limitations in the hypothetical questions the ALJ posed to the VE.  Willey contends the ALJ accepted the opinion of Dr. LeBray but neglected to include all of Dr. LeBray's restrictions in formulating the hypothetical questions.  He also contends that the ALJ should have accepted Willey's testimony about his inability to perform repetitive work and his inability to work with others.

RFC "is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning eight hours a

Page 12 - OPINION AND ORDER

day, five days a week, or the equivalent.  SSR 96-8p.  RFC is the most a person can do in spite of limitations or restrictions.  Id.  "The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  Id.  Additionally, hypothetical questions posed to a vocational expert must specify all of the limitations and restrictions of the claimant.  Edlund v. Massanari, 253 F.3d 1152, 1160 (9th Cir. 2001).  If the hypothetical does not contain all of the claimant's limitations, the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.  Id.

      Dr. LeBray opined that Willey was moderately limited in his ability to respond appropriately to changes in the work setting and that he would do best with predictable routines and no frequent changes.  Without citing any evidence in the record, Willey suggests that auto body work requires being comfortable with change and unpredictable routines, so the VE's conclusion that Willey could perform that work is not supported by substantial evidence.  Furthermore, Willey argues, again without citation to any evidence, that a small-sized shop, with its fewer workers, requires flexibility and willingness to perform more tasks.  Willey contends that with the inclusion of these restrictions, the VE would conclude he could not perform his past work.

      While the ALJ's hypothetical did not include Dr. LeBray's specific language regarding a limitation in responding to change, the ALJ did ask the VE to consider someone who "would work best with simple not fast paced work, **routine**, would work best alone, and should not work with the public."  Tr. 409 (emphasis added).  The VE responded that the auto body repairer helper job meets the criteria the ALJ posed in the hypothetical.  She specifically noted that the

Page 13 - OPINION AND ORDER

larger shops are more complicated, but the small operator or owner will have helpers, and the job is "simple [and] routine." Tr. 409-10. Accordingly, the ALJ's hypothetical specifically addressed Willey's need for "routine" work, which is the opposite of changing circumstances. In short, the VE identified a job that called for simple and routine work, noted the difference between the larger and smaller auto body repair shops, and concluded that someone who was limited to routine work could perform this job. As a result, I reject Willey's suggestion that the ALJ erred.

Willey also seems to argue that he is only productive at a rate of sixty to seventy percent; the VE testified no person could be competitively employed at that rate of efficiency. Willey does not point to any evidence indicating his level of efficiency is this low, and he does not bicker with the ALJ's reliance on Dr. LeBray's RFC who did not identify such an efficiency problem.

Willey also contends the ALJ failed to include the following portions of his RFC in the hypothetical to the VE: (1) his inability to engage in repetitive work; and (2) his need to perform the work alone, except for infrequent, incidental interaction with supervisors and co-workers.

Willey suggests that the ALJ's error in not accepting Willey's testimony about his unwillingness to perform repetitive work is problematic because the job the VE found consistent with the ALJ's hypothetical would involve repetitive work. As a repairer helper, Willey opines, he would be required to perform only a subset of what he used to do, reducing the number of tasks he would perform.

Page 14 - OPINION AND ORDER

As I indicated above, the ALJ properly rejected Willey's testimony that he could not do repetitive work because he experiences "black out spells." Tr. 394. As the ALJ pointed out, Willey's treatment for his psychological problems was routine and conservative and, when he was getting help, it was effective. An ALJ is not required to incorporate limitations that are not supported by substantial evidence. Osenbrock v. Apfel, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

As for infrequent contact with supervisors and co-workers, the ALJ's requirement that the work be performed alone adequately captures any limitation on contact with co-workers and supervisors. Willey infers that the job of auto body repairer helper would require co-worker and supervisor interaction based on the word "helper." I note again that the hypothetical specifically included the requirement that Willey work alone. Furthermore, in response to the hypothetical, the VE specifically testified, "This work is more simplified. It's medium level. **They work alone.** They work at their own pace for the most part." Tr. 409 (emphasis added).

The ALJ's RFC, and the VE's testimony in response to the ALJ's hypothetical, is supported by substantial evidence in the record. Accordingly, the ALJ did not err.

IV.     Duty to Develop the Record

Willey contends the ALJ failed to develop the record regarding his cognitive disorder. He asserts that the physicians who evaluated Willey did not know about his cognitive disorder except for Dr. Breen. Willey also contends no physician evaluated him during the period of disability regarding the effect of the cognitive disorder. He asserts the ALJ ignored the cognitive disorder and the limitations it imposed on him.

The ALJ specifically noted Dr. Breen's diagnosis of Willey's cognitive disorder. Dr. Breen recognized Willey's problems with attention, concentration, and motor speed. However,

Page 15 - OPINION AND ORDER

he concluded Willey could perform work that was slower paced and did not require co-worker interaction. Willey not only fails to identify functional limitations that the ALJ should have considered in formulating Willey's RFC, nothing in the medical record supports a conclusion that Willey's cognitive disorder caused additional limitations not already included in the RFC. The ALJ did not err in failing to develop the record. <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005) (describing circumstances for when record must be supplemented, which include the presence of ambiguous evidence or an inadequate record).

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this      22nd         day of September, 2010.

                                              /s/ Garr M. King
                                              Garr M. King
                                              United States District Judge